[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10135

_____

D. C. Docket No. 05-02047-CV-2-VEH

HR ACQUISITION I CORPORATION,
f.k.a. Capstone Capital Corporation,

Plaintiff-Appellee,

versus

TWIN CITY FIRE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 3, 2008)**

Before DUBINA, HULL and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal involves a dispute over insurance coverage.  Plaintiff-Appellee

Capstone Capital Corporation ("Capstone"),[1] a real estate investment trust, sued its

insurance carrier Defendant-Appellant Twin City Fire Insurance Company ("Twin

City") for coverage of litigation expenses related to defending a particular lawsuit.

In moving for summary judgment, Twin City argued to the district court that

Capstone's claim did not come within its insurance policy with Twin City (the

"Policy"), and also invoked three of the Policy's coverage exclusions.  The district

court denied Twin City's motion in full.  For the reasons set forth below, we

reverse the portion of the district court's order denying summary judgment on the

basis of one of the exclusions: the "prior litigation" exclusion.  Because we

conclude that the "prior litigation" exclusion defeats the coverage claimed by

Capstone, we do not consider the other defenses advanced by Twin City and

rejected by the district court.

## I.  FACTS

## A.  Background

*The Tucker Action*

Two particular lawsuits are relevant to this appeal.  The first is a shareholder

derivative suit filed on August 28, 2002 by Wade Tucker, a shareholder of

---

[1]  Plaintiff-Appellee HR Acquisition I Corporation is the corporate successor to Capstone.  Because the insurance policy at issue, the prior lawsuits, and the parties themselves refer to the company as "Capstone," we will do so here.

HealthSouth Corporation ("HealthSouth").[2]  The Tucker action generally alleged a large-scale accounting fraud scheme by HealthSouth's directors and officers, as well as a number of other entities that aided in or conspired to commit such fraud to the detriment of HealthSouth and its shareholders.  Capstone was one such entity.  The Tucker complaint alleged that Capstone was owned or controlled by three HealthSouth directors and officers: Richard Scrushy, Michael Martin, and Larry Striplin.  The Tucker complaint referred to a scheme in which HealthSouth sold property to Capstone and then leased it back at artificially inflated prices.  Count V sought to recover against Capstone (among other defendants) for "Interested Transactions and Waste of [HealthSouth's] Corporate Assets."  Count VI sought to recover against Capstone, Richard Scrushy, and Michael Martin (among other defendants) for "Misappropriation of [HealthSouth's] Corporate Assets."

*The Madrid Action*

The second lawsuit relevant to this appeal is a false claims *qui tam* action filed on December 15, 1997 by Greg Madrid, who was employed by HealthSouth

---

[2]  The full caption for this case, filed in the Circuit Court of Jefferson County, Alabama, is Wade Tucker, derivatively, for the benefit of and on behalf of Nominal Defendant HealthSouth Corporation v. Richard M. Scrushy, et al., Case CV-02-5212.  We shall refer to this action as "Tucker."

3

as a reimbursement specialist.[3]  The lawsuit named HealthSouth, Richard Scrushy, Gerald Scrushy (Richard Scrushy's brother), and Capstone as defendants.  The Madrid complaint alleged that Richard Scrushy was a co-founder and director of Capstone, and owned a "substantial interest" in that company.  Count VI of the Madrid complaint was a count against HealthSouth and Richard Scrushy for submitting false claims to the United States government's Medicare program. Specifically, that count alleged that HealthSouth, under the direction of Richard Scrushy, engaged in a series of transactions with Capstone in which HealthSouth sold depreciable buildings to Capstone, leased them back from Capstone at artificially high prices, and sought reimbursement from the federal government through Medicare.  Count VIII was a claim against HealthSouth, Richard Scrushy, and Capstone for conspiring to defraud the United States government in connection with the misconduct alleged in Count VI.

Neither Capstone nor Richard Scrushy were ever served with copies of the Madrid complaint, nor made appearances in that case.  HealthSouth eventually settled the claims by paying the United States government $7.9 million plus interest, and the case was dismissed with prejudice.[4]

---

[3]  The full caption for this case, filed in the District Court for the Northern District of Alabama, is United States of America ex rel. Greg Madrid v. HealthSouth Corp., et al., Case No. 97-CV-03206.  We shall refer to this action as "Madrid."

[4]  The Tucker complaint referenced the Madrid lawsuit in Paragraphs 60-61. Specifically, the Tucker complaint stated that Richard Scrushy's wrongful actions "involving

*Capstone's Policy and Twin City's Denial of Coverage for the <u>Tucker</u> Action*

Capstone purchased a "claims made" insurance policy from Twin City with a policy period of July 15, 2000 to October 15, 2004.  The Policy contains four insuring agreements: Insuring Agreements A, B, C, and D.  The only agreement at issue here is Insuring Agreement D, entitled Company Non-Securities Claim Liability.  Insuring Agreement D provides in relevant part that Twin City:

> will pay on behalf of [Capstone] Loss not otherwise covered . . . which [Capstone] shall become legally obligated to pay as a result of a Non-Securities Claim first made during the Policy Period . . . against [Capstone] for a Wrongful Act which takes place during or prior to the Policy Period . . . .

Policy, ¶ I(D).[5]

The Policy contains several exclusions from coverage.  The exclusion relevant to this opinion is the "prior litigation" exclusion, which states that Twin

---

overpayment through . . . Capstone" damaged HealthSouth and constituted breach of fiduciary duty, unjust enrichment, and waste of corporate assets.  This is because Richard Scrushy's wrongdoing with Capstone enriched him personally, yet caused HealthSouth to pay $7.9 million plus interest to the United States government to settle the resulting lawsuit (i.e., the <u>Madrid</u> action).

[5]  A "*Claim*" is defined in pertinent part as "a civil or criminal proceeding commenced by the service of a complaint or similar pleading . . . against . . . [Capstone], for a Wrongful Act." Policy, ¶ IV(A).  "*Loss*" is defined in pertinent part as "sums which . . . [Capstone] [is] legally liable to pay solely as a result of any Claim insured by this Policy."  <u>Id.</u> at ¶ IV(J).  A "*Non-Securities Claim*" is defined in pertinent part as "any Claim other than a Securities Claim jointly first made against both [Capstone] and the Directors and Officers."  A "*Wrongful Act*" is defined in pertinent part as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the Directors and Officers, in their capacity as such . . . or, with respect to Insuring Agreements B(2), C and D, by [Capstone]."  <u>Id.</u> at ¶ IV(Q).

City "shall not be liable to make any payment for Loss in connection with any Claim" made against Capstone that was

> based upon, arising from, or in any way related to any demand, suit, or other proceeding against any Insured which was pending on or existed prior to the applicable Prior Litigation Date specified by endorsement to this Policy, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding.

Id. at ¶ V(H).  The "*Prior Litigation Date*" to which the exclusion refers is December 17, 1997.  Id. at 17.

The Policy features other exclusions, including one related to acts by Capstone's directors or officers while they served a different entity (the "outside service" exclusion), and one related to criminal or deliberately fraudulent acts by Capstone's directors or officers (the "fraud" exclusion).  Id. at ¶¶ V(F), (J).

Shortly after being served with a copy of the Tucker complaint, Capstone made a claim for loss incurred in defending against that lawsuit.  Twin City denied coverage for any loss related to Tucker.

## B. Procedural History

Capstone filed suit in Alabama state court on September 16, 2005 based on Twin City's denial of coverage for loss related to Tucker.  Specifically, Capstone sued for breach of contract (that is, the Policy) and for a declaratory judgment that the Policy covered loss related to Tucker.  Twin City removed the suit to the

6

United States District Court for the Northern District of Alabama on September 28, 2005 based on diversity.

On January 26, 2007 Twin City moved for summary judgment, making several different arguments: first, that no "Wrongful Acts" had been alleged in Tucker sufficient to trigger coverage under the Policy; second, that the Policy's "outside service" exclusion applied to Capstone's Tucker claim; third, that the "prior litigation" exclusion applied to Capstone's Tucker claim; fourth, that the "fraud" exclusion applied Capstone's Tucker claim; and fifth, that because Capstone had not actually incurred any loss as a result of defending Tucker, Capstone was not entitled to coverage under the Policy. The district court rejected all of Twin City's arguments and denied its motion for summary judgment in full. Twin City moved for reconsideration of the district court's order on the "outside service" exclusion. The court granted the motion for reconsideration, but affirmed its denial of Twin City's motion for summary judgment on that ground.[6]

On appeal, Twin City argues that the district court erred in rejecting all of its arguments. However, because we find that the Policy's "prior litigation" exclusion

---

[6] After the district court denied Twin City's motion for summary judgment, Capstone filed its own motion for partial summary judgment. That motion sought a determination that under the Policy, Twin City was obligated to advance claims expenses for defending Tucker. The district court granted Capstone's motion, and certified the issue for appeal under 28 U.S.C. § 1292. Twin City petitioned for permission to appeal the district court's grant of Capstone's motion, and we denied that petition.

applies and that Twin City's motion for summary judgment should have been granted on that basis, we need not review the district court's other grounds for denying Twin City's motion.[7]

## II. STANDARD OF REVIEW

"We review the trial court's grant or denial of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002) (citation omitted).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[7] We will briefly address Twin City's first argument: that Capstone's claim for loss related to Tucker does not come within the Policy at all. As stated above, Insuring Agreement D provides in pertinent part that Twin City will cover "Loss not otherwise covered . . . which [Capstone] shall become legally obligated to pay as a result of a Non-Securities Claim first made during the Policy Period . . . against [Capstone] for a Wrongful Act."

Twin City argues that Tucker does not come within Insuring Agreement D because it was not a "Non-Securities Claim" for "Wrongful Acts" as those terms are defined in the Policy (see Footnote 5) – that is, Tucker was not a claim jointly made against both Capstone and its directors and officers "*in their capacity as such*." Rather, Twin City argues, Tucker sued Capstone's directors and officers for actions taken in their capacity as directors and officers of *HealthSouth*. The district court denied Twin City's summary judgment motion on this argument, finding that Tucker did implicate Richard Scrushy, Michael Martin, and Larry Striplin "in their capacities" as Capstone directors and officers (or that was at least a reasonable interpretation) because the complaint "expressly reference[d] their alleged collective connection to the very creation and/or running of Capstone." We agree with the district court's analysis and conclusion on this point – Tucker alleges that Scrushy and others used their positions in *both* Capstone and HealthSouth to set up a fraudulent sale and leaseback scheme for their own benefit. Thus, we adopt the district court's order insofar as it denied Twin City's motion on that basis.

8

entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323 (internal quotations omitted). If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

Further, "[i]n a diversity case, a federal court applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary." Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991) (citation omitted). In this case the forum state is Alabama. The parties agree that under Alabama choice of law rules, Alabama law governs the interpretation of the Policy. "In Alabama, the interpretation of a contract, including an insurance contract, is a question of law reviewed *de novo*." Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc., 480 F.3d 1254, 1258 (11th Cir. 2007) (citation omitted).

### III. ANALYSIS

Twin City argues that the district court erred in denying its motion for summary judgment based on the Policy's "prior litigation" exclusion. In determining whether Twin City was entitled to summary judgment based on that exclusion, we must examine two issues. First, we must determine whether the Tucker lawsuit was "based upon, arising from, or in any way related to" another lawsuit – here, Twin City contends that Madrid was such a related lawsuit. Second, if we determine that Madrid was related to Tucker within the meaning of the "prior litigation" exclusion, we must also determine whether Madrid was "pending" or if it "existed" "against" Capstone before the Prior Litigation Date.

## A. "Related" Litigation

Twin City argues that the Madrid action was "related" to the Tucker action within the meaning of the "prior litigation" exclusion. We agree.

Under Alabama law, "[g]eneral rules of contract law govern an insurance contract. The court must enforce the insurance policy as written if the terms are unambiguous." Lambert v. Coregis Ins. Co., Inc., 950 So. 2d 1156, 1161 (Ala. 2006) (quoting Safeway Ins. Co. of Ala. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005)) (internal citations and quotations omitted). Further,

> the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. If a word or phrase is not

10

defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. The court should not define words it is construing based on technical or legal terms.

Id. at 1161-62 (quoting Safeway, 912 So. 2d at 1143) (internal quotations and citations omitted).

"It is well established . . . that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured." St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So. 2d 1375, 1377 (Ala. 1992). Further, "when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording." Id. (citation omitted). "However, it is equally well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage." Id. Indeed, "[i]f there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." Id. (citation omitted).

Further, "[i]nsurance contracts, like other contracts, are construed to give effect to the intention of the parties and, to determine this intent, the court must

11

examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." Royal Ins. Co. of Am. v. Thomas, 879 So. 2d 1144, 1153-54 (Ala. 2003) (quoting Hall v. Am. Indem. Group, 648 So. 2d 556, 559 (Ala. 1994)) (citation omitted).

The Policy at issue in this case is a "claims made" policy. Under a "claims made" policy, coverage only applies to those claims first made during the policy period. As one court has put it, such policies

> are intended by insurers to avoid the hazard of an indefinite future: Once the policy period has expired, the book can be closed on everything except then-pending claims. On the other hand, an insurer incurs a risk with this kind of policy: liability for a claim that has been brewing and was ripe to erupt before the policy period, but is asserted only after the policy period begins. For this reason, claims made policies generally include a number of endorsements and exclusions intended to limit this front end risk by cutting off liability for claims ready, but not yet made, at the start of the policy period.

Ameriwood Indus. Int'l Corp. v. Am. Cas. Co., 840 F. Supp. 1143, 1148-49 (W.D. Mich. 1993) (internal quotations and citations omitted).

Here, the "prior litigation" exclusion in Capstone's Policy states that Twin City shall not be liable for loss in connection with a Claim that is "based upon, arising from, or in any way related to any demand, suit, or other proceeding" against Capstone which was "pending on or existed prior to the applicable Prior Litigation Date . . . , or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other

12

proceeding." Twin City contends that <u>Madrid</u> was "related" to <u>Tucker</u> within the meaning of the Policy's "prior litigation" exclusion. We agree.

As explained above, <u>Tucker</u> was a lawsuit on behalf of HealthSouth shareholders against HealthSouth officers and directors, as well as entities alleged to have conspired to defraud HealthSouth shareholders. The <u>Tucker</u> complaint alleged that Capstone was owned or controlled by three HealthSouth directors and officers: Richard Scrushy, Michael Martin, and Larry Striplin. Paragraphs 102-103 of the <u>Tucker</u> complaint described a scheme in which, at the direction of Richard Scrushy and other individual defendants, HealthSouth sold property to Capstone and then entered into long-term lease agreements with Capstone at artificially inflated prices. As alleged, this scheme was set up to enrich Richard Scrushy, Michael Martin, and others. Count V sought to recover against Capstone (among other defendants) for "Interested Transactions and Waste of [HealthSouth's] Corporate Assets" because HealthSouth's alleged transactions with Capstone were "less beneficial to HealthSouth than such transactions would have been had the transactions been conducted with unrelated and independent persons." <u>Tucker</u> Compl. ¶ 174; <u>see also</u> <u>id.</u> at ¶ 179 ("Sale and lease back of depreciable buildings at above-market rates amount to a waste of corporate assets, as well as unfair interested transactions."). Count VI sought to recover against Capstone, Richard

13

Scrushy, Gerald Scrushy, Michael Martin, and several other defendants for "Misappropriation of [HealthSouth's] Corporate Assets," alleging that Capstone, Richard Scrushy, Gerald Scrushy, Michael Martin, and others "misappropriated assets of HealthSouth" for their "personal benefit." Id. at ¶ 185.

With respect to Madrid, the complaint in that case alleged that Richard Scrushy was co-founder and director of Capstone, and owned a significant interest in that company. Madrid Compl. ¶ 59. The Madrid complaint also alleged that Richard Scrushy was founder and organizer of HealthSouth and served as its Chief Executive Officer and Chairman of its Board of Directors. Id. at ¶ 7. Count VI of the Madrid complaint alleged that "HealthSouth has sold its properties to Capstone at artificially high prices (i.e., above market value), and then entered into lease agreements with Capstone under which HealthSouth must pay rental prices that are also artificially high (i.e., above market value)." Id. at ¶ 62. Count VIII of the Madrid complaint sued Capstone and Richard Scrushy for conspiring to defraud the United States government through such a sale and leaseback scheme. Id.

It is clear from the foregoing passages that Madrid and Tucker allege the same type of wrongdoing by Capstone: purchasing real estate from HealthSouth, and then leasing it back to HealthSouth at artificially high prices. According to the very broad language of the "prior litigation" exclusion, a prior lawsuit need only be

14

based upon, arising from, *or in any way related to* the <u>Tucker</u> lawsuit for the exclusion to apply. We find that <u>Madrid</u> clearly meets that low standard – it is certainly "in any way related" to <u>Tucker</u>.

Capstone argues that the exclusion does not apply because neither the <u>Madrid</u> nor <u>Tucker</u> complaints identified any *specific transactions* between HealthSouth and Capstone. However, given the broad language in the "prior litigation" exclusion, it is not necessary for the same transactions to have been at issue in <u>Madrid</u> and <u>Tucker</u>, only that the two lawsuits be "in any way related." This is certainly the case – in both actions Capstone was named as a defendant and sued for the same type of wrongdoing. It is true that in <u>Madrid</u> this wrongdoing was alleged to have harmed the United States government, while in <u>Tucker</u> it was alleged to have harmed HealthSouth's shareholders. However, the fact that <u>Madrid</u> and <u>Tucker</u> involved different plaintiffs, and that the claims against Capstone were based upon different theories of recovery, does not change the result. The "prior litigation" exclusion does not require that the parties, claims, or theories of recovery in each suit be identical – only that the suits be "in any way related to" each other.[8]

---

[8] We find two particular cases useful in this analysis. In both, the insurance policies at issue contained language similar to the "prior litigation" exclusion here – they excluded coverage where one lawsuit "in any way involv[ed]" a prior lawsuit. <u>Monroe County, Iowa v. Int'l Ins. Co.</u>, 609 N.W.2d 522 (Iowa 2000); <u>Zunenshine v. Executive Risk Indem., Inc.</u>, No. 98-9251, 1999 WL 464988 (2d Cir. June 29, 1999). Both courts held that one lawsuit need not

15

## B.  "Pending" Litigation

Although we find that <u>Madrid</u> was "in any way related" to <u>Tucker</u> within the meaning of the "prior litigation" exclusion, this does not end our inquiry as to whether the exclusion applies to Capstone's claim for coverage.  We must still determine whether <u>Madrid</u>, which was filed on December 15, 1997, was "pending" or "existed" "against" Capstone before the Prior Litigation Date of December 17, 1997.

In arguing against the applicability of the "prior litigation" exclusion, Capstone emphasizes that it was never served with the <u>Madrid</u> complaint or made an appearance in that case.  Thus, Capstone contends, the <u>Madrid</u> action could not have "existed" or been "pending" "against" it within the meaning of the exclusion.  The district court agreed with Capstone on this point, holding that "Twin City . . . failed to establish[] as a matter of Alabama law that an unserved but named defendant, such as Scrushy or Capstone, has an action pending 'against' him or it with [sic] the meaning of the 'prior litigation' exclusion."  We do not agree.

The "prior litigation" exclusion exempts from coverage a Claim related to "any demand, suit, or other proceeding against any Insured which was pending on or existed prior to the applicable Prior Litigation Date."  Policy at ¶ V(H).  The

---

feature the same wrongful acts or legal theories to be "in any way involving" the other.   <u>Monroe County</u>, 609 N.W.2d at 525-26; <u>Zunenshine</u>, 1999 WL 464988, at *1-2.  We recognize that these cases are not controlling, but we find their reasoning sound.

terms "*pending*," "*exist*," and "*against*" are not defined within the Policy. As explained above, Lambert instructs that "[i]f a word or phrase is not defined in [an insurance] policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." 950 So. 2d at 1162 (internal citations and quotations omitted). We believe that a person of ordinary intelligence would reasonably consider a lawsuit "against" a person or entity to be "pending" or to "exist" when it names that person or entity as a defendant and is properly filed with a court, and thus docketed and given a case number.

We also look to Alabama state law for guidance on when a case is "pending" or "exists" "against" a person or entity. According to Rule 3(a) of the Alabama Rules of Civil Procedure: "A civil action is commenced by filing a complaint with the court." Notably, an Alabama appellate court recently referred to the "pendency" of a case before service had been effected on any defendants. Wagner v. White, 985 So. 2d 458, 461-62 (Ala. Civ. App. 2007). Another Alabama appellate court referred to a suit as "pending against" an individual even though he was not served with a copy of the complaint. Walnut Equip. Leasing Co., Inc. v. Long, 550 So. 2d 998, 998 (Ala. Civ. App. 1989) ("[The appellee] was never

17

served with a copy of the complaint filed by [the appellant], nor was he in any way notified that a suit was pending against him.").

Further, in Penney v. Speake the Alabama Supreme Court determined that a suit "against" two individuals was "pending" because the complaint had been filed, regardless of the fact that the two individuals had not been served with copies of the summons and complaint.[9] 54 So. 2d 709, 712 (Ala. 1951); see also Williams v. Colle, 171 So. 2d 105, 106 (Ala. 1965) ("Under our statutes and decisions, we must hold that a suit which had been properly filed is a pending suit . . . .").

An Alabama district court has also stated that "[t]he test of whether a suit is pending or not is whether or not a complaint in the suit has been filed against any defendant or defendants (Rules 3, 4(a), Alabama Rules of Civil Procedure)." Golatte v. Mathews, 394 F. Supp. 1203, 1207 (D.C. Ala. 1975). The Alabama Supreme Court explicitly agreed with the Golatte court's interpretation of Alabama law, including the above-quoted "test" of whether a suit is pending. Sanders v. Martin, 662 So. 2d 241, 244 (Ala. 1995). Further, in Sanders the Alabama

_____

[9] In coming to this determination the Penney court looked to the following statutory language then in effect: "The filing of the complaint, bill of complaint, or other statement of plaintiff's cause of action, in the office of the clerk or register of the circuit court, or other ministerial office of courts of like jurisdiction, shall constitute the commencement of suit." 54 So. 2d at 712. This language is the functional equivalent of the current Alabama Rule of Civil Procedure 3(a), which states that "[a] civil action is commenced by filing a complaint with the court."

18

Supreme Court noted that a particular rule was "applicable only where an action is pending, *i.e., where a complaint has been filed*." Id. (emphasis added).

Moreover, as explained above, a court must read each phrase in an insurance contract "in the context of all other provisions" to determine the parties' intent. Royal Ins. Co., 879 So. 2d at 1154 (internal quotations and citations omitted). We note that according to the Policy here, a lawsuit cannot constitute a "*Claim*" unless it is "[a] civil or criminal proceeding commenced by the service of a complaint or similar pleading." Policy, ¶ IV(A). Clearly, the Policy drafters knew how to specify when service of a complaint was required – and such an express service requirement is noticeably *absent* from the "prior litigation" exclusion.

Capstone argues in its appellate brief that Madrid was not a "pending" or "existing" action "against" Capstone before December 17, 1997 because it was never served with a copy of the complaint in that case, and so never became a "party" to it. In support of this argument, Capstone cites to several cases which state that those who are not served with a copy of the complaint do not become "parties" to the litigation. See, e.g., Saucier v. Katz, 533 U.S. 194, 211 n.1 (2001) ("Though named as a defendant, Parker was never served with the complaint, and therefore did not become a party to this litigation.") (Ginsberg, J., concurring); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999)

19

("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.") (citations omitted); Loman Dev. Co., Inc. v. Daytona Hotel and Motel Suppliers, Inc., 817 F.2d 1533, 1536 (11th Cir. 1987) (noting that those defendants who had not yet been served were not "parties" to the litigation) (citations omitted). However, the "prior litigation" exclusion only requires that a related lawsuit "against" Capstone be "pending" or that it "exist." The exclusion does not require that Capstone be "served" or made "party" to an action.[10]

Considering the meaning that an ordinary person would give to the terms "pending," "exist," and "against," the guidance from Alabama courts, and the Policy as a whole, we find that Madrid was "pending" and "existed" "against" Capstone before December 17, 1997 within the meaning of the "prior litigation" exclusion, because it had been filed on December 15, 1997 and it named Capstone as a defendant.

---

[10] Capstone also invokes the Eleventh Circuit case Geary v. City of Snellville in arguing that because the Tucker complaint was not served on Capstone, that lawsuit did not "exist" nor was it "pending" against Capstone before the Prior Litigation Date. No. 06-12898, 2006 WL 3228398, at *1 (11th Cir. Nov. 8, 2006) ("To constitute a valid action, the complaint must be served personally on the defendant.") (citations omitted). However, Snellville is an unpublished case and thus not controlling precedent. See Eleventh Circuit Rule 36-2. Moreover, in Snellville the court applied Georgia law – in the passage reproduced above, the court quoted directly from a Georgia state case interpreting a Georgia statute. Thus, Capstone's invocation of Snellville does not change our analysis.

20

### III. CONCLUSION

In sum, we hold that the <u>Madrid</u> action was both "in any way related" to the <u>Tucker</u> action, and that it was "pending" and "existed" "against" Capstone before the Policy's Prior Litigation Date. Thus, the Policy's "prior litigation" exclusion applies to Capstone's claim for loss related to <u>Tucker</u>. Accordingly, we reverse the district court's order and remand the case with instructions that the district court enter summary judgment for Defendant-Appellant Twin City on that basis.

**REVERSED and REMANDED.**