[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14302
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-01238-AKK


PROFESSIONAL ASSET STRATEGIES, LLC,
NORMAN M. BERK,

Plaintiffs - Counter -
Defendants - Appellants,

versus

CONTINENTAL CASUALTY COMPANY,

Defendant - Counter -
Claimant - Appellee,

HOWARD SCHULTZ,

Third Party - Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 17, 2011)

Before EDMONDSON, CARNES, and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants, Professional Asset Strategies ("PAS") and Norman M. Berk (collectively "Plaintiffs"), appeal the district court's grant of summary judgment in favor of Defendant-Appellee Continental Casualty Company ("Continental") disposing of Plaintiffs' insurance-based claims. No reversible error has been shown; we affirm.

PAS and its sole owner, Berk, provide fee-only investment advice to clients. PAS does not take custody or possession of its clients' funds; the funds and assets are held by custodian Charles Schwab ("Schwab") in accounts in the clients' names.

In October 2003, PAS employed Andrew Petrofsky. At Petrofsky's urging, Petrofsky's grandparents, Howard and Merle Schultz, moved their investment accounts to Schwab for PAS's management. In early 2005, Petrofsky began stealing money from his grandparents' account and continued to do so into 2008. Petrofsky carried out his theft, in part, by writing checks on his grandparents' accounts -- on checks issued by Schwab directly to the grandparents -- and forging

his grandparents' signatures. Petrofsky carried out and concealed his conduct by using his position at PAS to gain access to Schwab's software. With access to Schwab's software, Petrofsky was able to modify his grandparents' Schwab account data to escape detection.

Berk discovered Petrofsky's theft in August 2008 and discharged him. Petrofsky is currently in prison. Before Berk's discovery of theft, no one at PAS had knowledge of Petrofsky's acts except Petrofsky. PAS sought coverage for the losses incurred by Petrofsky's grandparents under a professional liability policy issued by Continental. The policy issued in 2002 and was renewed each year. Continental denied coverage. Plaintiffs brought suit in circuit court in Alabama seeking a declaratory judgment that coverage existed under the policy; the case was removed to federal district court.

The policy issued to Plaintiffs by Continental provided that Continental would pay all claims:

> first made against *you* and reported in writing to us
> during the policy period by reason of an act or omission
> in the performance of professional services by *you* or by
> any person for whom you are legally liable provided that
> ... prior to the effective date of this policy, none of *you*
> had a basis to believe that any such act or omission, or
> interrelated act or omission, might reasonably be
> expected to be the basis of a claim. (Emphasis added).

Continental contends that no coverage is due under the policy because Petrofsky -- an employee of PAS -- falls within the definition of "*you*" in the policy. Continental also argues that Petrofsky was conducting "professional services" in the commission of his wrongful acts and knew or should have known at the time of the policy's effective renewal date that his acts might reasonably result in a claim on the policy. The district court agreed.[*]

Plaintiffs advance three arguments in an attempt to overcome Continental's denial of coverage. Plaintiffs contend that Petrofsky was not performing "professional service" when he stole the funds so he can not fall within the definition of "*you*" under the policy; a material issue of facts exists about whether Petrofsky had reason to believe that his acts would result in a claim; and coverage is due under the policy's "innocent insured" provision notwithstanding the prior knowledge of its employee who was misappropriating funds.

As we have said,

---

[*]Petrofsky also urged his mother-in-law to move her investment account to Schwab for PAS's management. According to Plaintiff, no thefts against that account occurred until after the effective date of the policy in 2008. Thefts from the mother-in-law's account were accomplished in the same manner as the thefts from the grandparents' account. The district court ruled that the mother-in-law thefts during the policy period were interrelated to the pre-policy thefts from the grandparents and were also foreclosed from coverage by Petrofsky's prior knowledge of his pre-policy thefts. Plaintiff's brief argues in conclusory and unpersuasive terms that the district court erred in its treatment of the mother-in-law thefts. Plaintiff's cursory treatment of this issue fail to address the terms of the policy -- quoted above -- which include expressly "interrelated act[s]" that "might reasonably be expected to be the basis of a claim."

4

[i]t is well established ... that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured. Further, when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording. However, it is equally well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage. Indeed, if there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties.

HR Acquisition I Corp. V. Twin City Fire Ins. Co., 547 F.3d 1309, 1315 (11th Cir. 2008) (internal quotations and citations omitted).

Plaintiffs' argument that Petrofsky's theft cannot constitute "professional services" because Petrofsky acted outside the scope of his duties to accomplish the theft is without merit. That a person acted outside his authority does not mean he was not in the act of rendering professional services. And, as the district court aptly noted, if Plaintiffs are correct that Petrofsky's acts fall outside the definition of "professional services," then no coverage could be claimed because a valid claim under the policy requires that the conduct arise "in the rendering of professional services."

5

About Plaintiffs' argument that a material issue of fact exists about Petrofsky's belief that his acts would result in a claim against PAS, the stipulated facts show that Petrofsky expended some effort to hide his theft from his victims. Under the language of the policy, the question is whether an objective person in Petrofsky's position should have expected that his acts might form the basis of a claim. So, apart from Petrofsky's subjective beliefs, on these stipulated facts a reasonable person could only expect that these acts might form the basis of a claim.

The "innocent insured" clause also fails to support Plaintiffs' coverage claim. The "innocent insured" clause provides that if coverage is excluded

> as a result of any criminal, dishonest, illegal, fraudulent or malicious acts by any of you, we agree that the insurance coverage that would otherwise be afforded under this Policy will continue to apply to any of you who did not personally commit, have knowledge of, or participate in such criminal, dishonest illegal, fraudulent or malicious acts or in the concealment thereof from us.

As noted by the district court, Continental's denial of coverage is not based on the "criminal, dishonest, illegal, fraudulent or malicious" nature of Petrofsky's acts. Continental argues that the innocent insured clause is inapplicable: Petrofsky's prior knowledge of the claim defeated coverage, not the criminality of his acts.

6

In a case brought against Continental involving similar language and a dishonest employee with knowledge of his own wrongdoing on the policy's effective date, in an unpublished opinion, a panel of the United States Court of Appeals for the Fourth Circuit -- citing with approval the opinion of the district court in this case -- upheld the denial of coverage based on the knowledge of the dishones

't employee. <u>Bryan Brothers, Inc. v. Continental Cas. Co.</u>, 419 Fed. Appx. 422 (4th Cir. 2011). Although the <u>Bryan Brothers</u> opinion is not binding precedent in the circuit where it issued, its reasoning seems persuasive here.

The professional liability policy that PAS purchased from Continental negated coverage of a claim if any of a broad group of persons affiliated with PAS -- including all employees -- knew of the basis of a claim on the policy's effective date. Continental had the right to so limit its liability.

AFFIRMED.