J-A15047-14

2014 PA Super 198

| | |
|---|---|
| AMERISOURCEBERGEN CORPORATION, INTEGRATED NEPHROLOGY NETWORK D/B/A/ DIALYSIS PURCHASING ALLIANCE, INC., F/K/A INTERNATIONAL NEPHROLOGY NETWORK, AMERISOURCEBERGEN SPECIALTY GROUP AND ASD HEALTHCARE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ACE AMERICAN INSURANCE COMPANY, | |
| Appellee | Nos. 2545 EDA 2013 |

Appeal from the Order Entered July 16, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2011, No. 002679

BEFORE: PANELLA, J., LAZARUS, J., AND JENKINS, J.

OPINION BY: JENKINS, J.                    **FILED SEPTEMBER 15, 2014**

AmerisourceBergen Corporation, AmerisourceBergen Specialty Group, Integrated Nephrology Network, and ASD Healthcare (collectively "Amerisource") incurred attorney fees and related costs defending a False Claims Act[1] lawsuit brought in Massachusetts federal court. Amerisource demanded that its insurer, ACE American Insurance Company ("ACE"), pay the attorney fees and costs, but ACE refused to pay on the basis of several exclusions in Amerisource's 2009-10 policy. Amerisource brought an

---

[1] 31 U.S.C. § 3729 *et seq*.

1

insurance coverage action against ACE alleging breach of contract and bad faith. On July 16, 2013, the trial court granted ACE's motion for summary judgment.

Amerisource filed a timely appeal to this Court. The trial court did not direct Amerisource to file a statement of matters complained of on appeal, opting instead to file a Pa.R.A.P. 1925(a) opinion incorporating by reference its order and opinion granting summary judgment.

We agree with the trial court that ACE properly denied coverage under exclusion L in Amerisource's 2009-10 policy, the "prior or pending litigation" exclusion. Accordingly, we affirm.

A brief history of Amerisource's policies with ACE and the False Claims Act lawsuit in Massachusetts provides the factual backdrop for our decision. Amerisource is a group of businesses that provides a vast range of services to healthcare providers and pharmaceutical companies, including distribution, logistics, clinical education, and marketing[2]. Between May 2006 and May 2010, Amerisource purchased the following professional liability insurance policies from ACE:

> *2006-07* – Amerisource's primary insurance carrier was St. Paul Travelers. Amerisource purchased an **excess** policy from Ace which provided $10 million in coverage over and above Amerisource's self-insurance and St. Paul's primary coverage of $21 million. Amerisource calls this a "tower" of coverage

---

[2] R.R. 4499-4505.

in which Ace's excess coverage was at the top of the tower[3].

*2007-08* – Ace provided **primary** coverage, the spot St. Paul's held in 2006-07. This was a "replacement" policy for Ace's 2006-07 policy, because ACE's 2006-07 excess coverage was replaced with primary coverage in 2007-08. The terms of the 37-page 2007-08 primary policy were vastly different than the 4-page 2006-07 excess policy[4].

*2008-09* – Ace provided **primary** coverage. The 2008-09 policy is a "renewal" policy, since it renewed the primary coverage ACE provided in 2007-08[5].

*2009-10* – Ace provided **primary** coverage. This was a "renewal" policy, because it renewed the primary coverage ACE provided in 2008-09 and 2007-08[6].

The policy year for each policy began on May 1st.

The False Claims Act ("FCA") is a civil fraud statute that creates a right of action to recover damages and penalties, on behalf of the federal government, for false claims or statements to the government relating to government payments. Citizens have the right under the *qui tam* provision of the FCA, 31 U.S.C. § 3730(b), to bring "relator complaints" on behalf of the United States. The complaint must be filed *in camera* under seal and cannot be served on the defendant until the court so orders. ***Id***. The federal government has the duty to examine the sealed complaint to

---

[3] R.R. 3139-46 (2006-07 excess policy).
[4] R.R. 3207-45 (2007-08 primary coverage policy).
[5] R.R. 3248-3300 (2008-09 primary coverage policy).
[6] R.R. 51-107 (2009-10 primary coverage policy); ***see also*** Amerisource's Reply to New Matter, ¶ 58 (Amerisource's admission that the 2009-10 policy is the "second renewal of a policy first issued effective May 1, 2007").

determine if the United States will prosecute the FCA claims itself, dismiss the claims, or release them for prosecution by the relator. Only when the United States takes up a *qui tam* action itself or releases it to the relator for prosecution does the court unseal the complaint and permit service on all defendants.

On June 5, 2006, Kassie Westmoreland filed a *qui tam* action in the District Court of Massachusetts against Amerisource and another company, Amgen, under the FCA[7]. The complaint was kept under seal for three years. Westmoreland alleged that Amgen and Amerisource conspired with medical providers to submit false Medicare claims relating to Aranesp, an anemia drug[8].

Amerisource claimed that it learned of the *qui tam* case in March 2008, when Amgen informed Amerisource that Amgen was under federal investigation[9]. In February 2009, the Department of Justice ("DOJ") informed Amerisource that it was reviewing a relator's allegations about Amgen and Amerisource. On February 11, 2009, the Massachusetts federal court permitted the government to place a redacted copy of the unserved

---

[7] R.R. 701-796 (original *qui tam* complaint). The complaint was later amended several times.

[8] The action concluded with a settlement in which Amgen agreed to pay $762 million in fines to the government, and INN, one of AmerisourceBergen's subsidiaries, agreed to pay $15 million to the government.

[9] R. 41a (allegation in Amerisource's complaint in present action). R. 4724-25a (Debra Swartz deposition).

*qui tam* complaint on the electronic docket[10]. On June 18, 2009, the DOJ issued a confidential subpoena to Amerisource concerning the *qui tam* matter[11].

On July 8, 2009, Amerisource sent ACE formal notice of a potential claim and a copy of the redacted complaint[12]. In January 2010, Amerisource received service of original process in the Massachusetts lawsuit[13]. On April 5, 2010, ACE denied coverage to Amerisource under the 2009-10 primary coverage policy and refused to defend Amerisource in the *qui tam* matter or pay claims expenses[14].

In March 2011, Amerisource filed the present insurance coverage action against ACE, which argued in its defense that exclusions L, K and Y in the 2009-10 policy barred coverage for the *qui tam* action. Subsequently, the trial court entered summary judgment in favor of ACE on the ground that both exclusions L ("prior or pending litigation") and Y ("false, deceptive or unfair business practices") precluded coverage.

In an appeal from an order granting summary judgment,

> our scope of review. . .is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

---

[10] R.R. 3326-3435a (e-mail from Nathan Andrisani to Jonathan Sturz).
[11] R.R. 3577-90a (June 18, 2009 subpoena Issued by the United States Attorney's Office to Amerisource).
[12] R.R. 3592-95a (July 8, 2009 Notice of Circumstance Letter from Walter J. Hope, Jr to William Wise).
[13] R.R. 4827-4930a (relator action docket).
[14] R.R. 4318-23a (denial of coverage letter).

> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa.Super.2013) (citation omitted).

Generally, the proper construction of an insurance policy is a matter of law which the court may address at the summary judgment stage. *Nationwide Mut. Ins. Co. v. Nixon*, 682 A.2d 1310, 1313 (Pa.Super.1996). The court may resolve via summary judgment whether a claim is within a policy's coverage or barred by an exclusion, provided that the policy's terms are clear and unambiguous so as to preclude any issue of material fact. *Butterfield v. Giuntoli*, 670 A.2d 646, 651 (Pa.Super.1995).

Amerisource's 2009-10 policy provides that the terms and conditions of the policy

> shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this Policy is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the Insureds or the Insurer and without reference to the

reasonable expectations of either the Insureds or the Insurer[15].

In our view, this clause exists in harmony with the well-known principle that when the court interprets an insurance contract, words that are clear and unambiguous must be given their plain and ordinary meaning. *State Farm Fire and Cas. Co. v. MacDonald*, 850 A.2d 707, 710 (Pa.Super.2004) (citation omitted).

Amerisource's policies are "claims made" policies, a type of policy which covers all claims made during the policy period and timely reported by the insured. Since Amerisource made its claim for coverage in early 2010, the language of the 2009-10 policy governs this case. The 2009-10 policy defines "claim", in relevant part, as a "civil proceeding against [Amerisource] seeking monetary damages...commenced by the service of a complaint or similar pleading" or a "written demand against [Amerisource] for monetary damages[16]." As one court has said, claims made policies

> are intended by insurers to avoid the hazard of an indefinite future: Once the policy period has expired, the book can be closed on everything except then-pending claims. On the other hand, an insurer incurs a risk with this kind of policy: liability for a claim that has been brewing and was ripe to erupt before the policy period, but is asserted only after the policy period begins. For this reason, claims made policies generally include a number of endorsements and exclusions intended to limit this front end risk by cutting off liability for claims ready, but not yet made, at the start of the policy period.

---

[15] R. R. 74.

[16] R.R. 57 (definition of "claim" in 2009-10 policy).

***Ameriwood Indus. Int'l Corp. v. Am. Cas. Co.***, 840 F.Supp. 1143, 1148–49 (W.D.Mich.1993) (internal quotations and citations omitted).

Exclusion L in the 2009-10 policy, entitled "Prior or Pending Litigation", is one such exclusion "intended to limit [ACE's] front end risk for claims ready, but not yet made, at the start of the policy period." ***Id***. Exclusion L excludes any claim

> alleging, based on, arising out of, or attributable to **any prior or pending litigation**, claims, demands, arbitration, administrative or regulatory proceeding or investigation **filed or commenced on or before the earlier of the effective date of this policy or the effective date of any policy issued by [ACE] of which this policy is a continuous renewal or a replacement**, or alleging or derived from the same or substantially the same fact, circumstance or situation underlying or alleged therein.

[Emphasis added]. Applied to this case, exclusion L precludes coverage of any claim based on prior litigation filed or commenced on or before the earlier of:

(1) the effective date of Amerisource's 2009-10 policy, or

(2) the effective date of any policy issued by ACE of which the 2009-10 policy is a continuous renewal or a replacement.

Based on our review of the record, we conclude that the effective date of Amerisource's 2009-10 primary coverage policy was May 1, 2009. This policy was a continuous renewal of the primary coverage policy issued by ACE to Amerisource effective May 1, 2007. Therefore, exclusion L precludes

coverage for litigation filed or commenced on or before May 1, 2007. Since Westmoreland filed her *qui tam* action on June 5, 2006, almost one year before May 1, 2007, ACE properly invoked exclusion L to deny coverage for defense costs that Amerisource incurred in defending against Westmoreland's action.

Amerisource submits two arguments for the proposition that exclusion L does not apply. We address each in turn.

**First**, Amerisource contends that Westmoreland's lawsuit falls outside of exclusion L because Westmoreland merely filed her complaint under seal in June 2006 but did not serve it on Amerisource until midway through the 2009-10 policy period (January 2010). We disagree.

Amerisource's argument requires us to interpret the meaning of "filed" and "commenced" within the context of Exclusion L. Amerisource's policy does not define these terms -- but as explained above, we must construe clear and unambiguous words in accordance with their plain and ordinary meaning. **State Farm**, **supra**, 850 A.2d at 710. Viewed in this light, we think it is clear that litigation is "filed" or "commenced" against an entity when it names that entity as a defendant, is filed with a court, and is docketed and given a case number. Nothing in the ordinary meaning of these terms requires service of original process or unsealing of the complaint in order for an action to be "filed" or "commenced". No litigator in today's

9

world would interpret an action he has filed with the prothonotary to be "unfiled" or "uncommenced" until he serves the complaint on the defendant.

We also find significant that the 2009-10 policy defines a "claim" as a "civil proceeding against [Amerisource] seeking monetary damages...commenced by the service of a complaint or similar pleading." The explicit service requirement in this definition demonstrates that the parties knew how to include a service requirement when they so desired. Thus, the absence of a service requirement from exclusion L demonstrates that the parties did not intend for "filing" or "commencement" of litigation in exclusion L to depend upon service of process.

Our interpretation of "filed" and "commenced" is consistent with a decision from this Court and from another federal court. *See Norristown Auto. Co., Inc. v. Hand*, 562 A.2d 902 (Pa.Super.1989); *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309 (11th Cir. 2008). In *Hand*, Hand filed a civil complaint against Norristown Automobile Company ("Norristown") at 1:01 p.m., and Norristown filed a civil complaint against Hand in a different court on the same day at 4:13 p.m. Hand filed preliminary objections seeking dismissal of Norristown's complaint on the ground that Hand's action was a prior pending action. Norristown argued that both actions should be deemed filed at the same time because they were filed on the same day. We held, however, that "Hand's action must be considered prior in time to that of Norristown." *Id*., 562 A.2d at 904.

10

***Hand*** thus limits the determination of priority to the time that the first action is *filed*; the time of service is irrelevant to whether the first action constitutes a "prior" action. ***Hand*** thus implicitly refutes Amerisource's contention that the *qui tam* action filed under seal in June 2006 was not "prior litigation" under exclusion L of the 2009-10 policy.

In ***HR Acquisition I Corp.***, an insured requested the insurer to provide coverage for litigation expenses incurred in a shareholder's derivative lawsuit commenced during the policy period. The gravamen of the action was that the insured participated in a fraudulent scheme with other defendants to submit false claims to the federal government's Medicare program. The insurer denied coverage under the "prior litigation" exclusion[17] in the insured's policy based on a *qui tam* action alleging the same misconduct that had been filed under seal several years before the policy period and that was never served on the insured – circumstances that are virtually identical to the present case. Another defendant settled the claims by paying the United States government $7.9 million plus interest, and the case was dismissed with prejudice. Despite the lack of service, the Eleventh Circuit held that the insurer properly denied coverage under the

---

[17] The exclusion stated that the insurer "shall not be liable to make any payment for Loss in connection with any Claim. . .based upon, arising from, or in any way related to any demand, suit, or other proceeding against any Insured which was pending on or existed prior to the applicable Prior Litigation Date specified by endorsement to this Policy, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding." ***Id.,*** 547 F.3d at 1312.

"prior litigation" exclusion, stating: "The 'prior litigation' exclusion only requires that a related lawsuit 'against' [the insured] be 'pending' or that it 'exist.' The exclusion does not require that [the insured] be 'served' or made 'party' to an action." *Id*., 547 F.3d at 1317. Given the similarity between **HR Acquisition I Corp.** and this case, we find **HR Acquisition I Corp.** persuasive authority for our construction of the "prior litigation" exclusion in Amerisource's 2009-10 policy.

**Second**, Amerisource contends that exclusion L does not apply because the series of insurance policies issued by ACE to Amerisource extends back to May 1, 2006, thus predating Westmoreland's June 2006 lawsuit. Amerisource's argument, phrased in terms of exclusion L, is that Westmoreland filed or commenced her lawsuit on or after "the earlier of the effective date of the [2009-10] policy or of any policy issued by [ACE] of which [the 2009-10] policy is a continuous renewal or a replacement." We disagree with Amerisource.

Westmoreland obviously filed her June 2006 lawsuit before the effective date of the 2009-10 policy (May 1, 2009). Therefore, Amerisource's argument boils down to whether Westmoreland filed her lawsuit on or after "the effective date of. . .any policy issued by [ACE] of which *[the 2009-10] policy is a continuous renewal or a replacement*."

The 2009-10 policy does not define "renewal" or "replacement". Therefore, we must construe these words in accordance with their plain and

ordinary meaning[18]. **State Farm**, **supra**, 850 A.2d at 710. The ordinary meaning of "replace" is "to be used instead of[19]." The ordinary meaning of "renew" is "to do again[20]." Thus, we construe "replacement policy" to mean "a policy used instead of another policy" and "continuous renewal policy" to mean "a policy that is used again for consecutive policy periods".

The 2009-10 primary coverage policy is a "continuous renewal" of the 2007-08 and 2008-09 primary coverage policies. The policy numbers of the 2007-08, 2008-09 and 2009-10 policies -- EON 621683498 001, EON 621683498 002, and EON 621683498 003 – share the same prefix and middle components (EON 621683498) and have consecutive numerical suffixes (001, 002 and 003). **See Wendy's Intern., Inc. v. Illinois Union Ins. Co.**, 2007 WL 710242, *2 (S.D. Ohio 2007) (observing that policies numbered EON G21639175 002 and 003 were successive renewals of policy number EON G21639175 001).[21] This, however, does not overcome

---

[18] Although our legislature has defined "renewal" for purposes of automobile insurance policies, **see** 40 P.S. § 991.2001, and "replacement" for purposes of life insurance policies, **see** 40 P.S. § 625-1, these definitions are not controlling in this dispute over the interpretation of an agreement between two private parties. **See Profit Wize Marketing v. Wiest**, 812 A.2d 1270, 1276 n. 4 (Pa.Super.2002) ("While the General Assembly is free to define 'prevailing party' in any fashion it chooses, its definition [of this term] does not control in a contract dispute. This Court is constrained to interpret the language of this private contract in accordance with the plain and ordinary meaning of the Agreement's terms").

[19] **See** Merriam Webster Online Dictionary.

[20] **Id**.

[21] Indeed, ACE concedes that the 2009-10 policy is a continuous renewal of the 2007-08 and 2008-09 policies.

exclusion L, because the 2007-08 policy became effective on May 1, 2007, almost one year after Westmoreland filed suit.

In an attempt to surmount this obstacle, Amerisource argues:

(1) the 2007-08 primary coverage policy is a "replacement" of the 2006-07 excess policy that ACE issued on May 1, 2006; thus,

(2) Westmoreland's June 2006 lawsuit was filed one month after a policy issued by ACE of which the 2009-10 policy "is a continuous renewal or a replacement."

In effect, Amerisource claims the right under exclusion L to graft the "replacement" of the 2006 policy onto subsequent "continuous renewals." This construction is not consonant with exclusion L's language, as ACE cogently explains:

> Exclusion L's actual wording does not permit conjoining a supposed 'replacement' with a subsequent 'renewal line.' Exclusion L is worded in the disjunctive, referencing: 'the effective date of any policy issued by the Insurer of which **this Policy** is a continuous renewal **or a** replacement. . .' Exclusion L does <u>not</u> say the prior/pending date is determined by '. . .the effective date of any policy issued by the Insurer of which this Policy is the last of <u>any *combination* of renewals *and* replacements</u>...' Thus, it is irrelevant whether the 2007 policy replaced another policy. The actual wording of Exclusion L focuses on whether <u>this</u> Policy, i.e., the 20<u>09</u> policy, is a 'replacement' of another policy. [Amerisource] does not contend the 2009 Policy could be 'a replacement' of any 2006 policy.

ACE Brief, p. 22 (emphasis in part in original and in part added). Under Amerisource's interpretation, the 2009-10 policy is both (1) a "continuous

renewal" of the 2007-08 and 2008-09 policies **and** (2) a replacement of the 2006-07 policy issued three policy terms before with two primary policies issued in between. This construction does not withstand scrutiny due to the disjunctive wording of exclusion L: "a continuous renewal **or a** replacement".

In short, the 2009-10 policy did not "replace" the 2006-07 policy. The only policy that "replaced" the 2006-07 policy was the 2007-08 policy. ACE's construction of exclusion L thus carries the day.

For these reasons, we agree with the trial court's determination that exclusion L of Amerisource's 2009-10 policy precludes Amerisource from obtaining coverage from ACE for attorney fees and related costs incurred in defending against Westmoreland's *qui tam* lawsuit. Since we find that exclusion L applies, we need not review whether exclusion Y applies or address the other grounds for affirming the judgment raised in ACE's brief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2014

15