595 So.2d 1375 (1992)
ST. PAUL MERCURY INSURANCE COMPANY and St. Paul Fire and Marine Insurance Company[1]
v.
CHILTON-SHELBY MENTAL HEALTH CENTER.
1901621.
Supreme Court of Alabama.
February 28, 1992.
*1376 Edward O. Conerly and K. David Sawyer of McDaniel, Hall, Conerly & Lusk, P.C., Birmingham, for appellants.
Mark W. Lee of Parsons, Lee & Julliano, P.C., Birmingham, for appellee.
HOUSTON, Justice.
Chilton-Shelby Mental Health Center ("the Center") sued St. Paul Mercury Insurance Company ("St. Paul"), seeking a judgment declaring that the Center and one of its employees, Fred King, were covered under the general and professional liability portions of its policy issued by St. Paul. This action was filed after St. Paul had refused to provide coverage to the Center and King in an underlying wrongful death action. The trial court entered a judgment for the Center, holding that the Center and King were entitled to coverage under both portions of the policy. We affirm as to the professional liability portion of the policy; however, we reverse as to the general liability portion of the policy, and remand.
The wrongful death action for which the Center sought coverage arose out of the heat-related death of an 18-month-old infant, Randy Allen Carter, who had been left unattended on a hot summer day in a van owned by the Center. The Center, which provided rural transportation services in the communities it served, had contracted with a local day care center operated by the Young Women's Christian Association ("YWCA") to transport children between their homes and the YWCA. On the day of Randy's death, King had driven a group of children, including Randy, to the YWCA. Through a tragic oversight, Randy was not removed from the van at the YWCA, but, instead, was unknowingly transported back to the Center, where he remained in the parked van until his death. The jury returned a general verdict against the Center and King for the wrongful death of Randy in the amount of $250,000, and a judgment was entered on that verdict.[2]
At the time of Randy's death, the general liability portion of the policy issued by St. Paul designating the Center and King as named insureds was in effect. That portion of the policy provides, in pertinent part, as follows:
"We'll pay amounts you and others protected under this agreement are legally required to pay as damages for a covered bodily injury ... claim resulting from an accidental event."
The general liability portion of the policy specifically provided coverage for death resulting from a "bodily injury," and it defines "accidental event" as any event that results in bodily injury that the insured did not expect or intend to happen. This portion of the policy also contains an exclusion that provides, in pertinent part, as follows:
"Autos. We won't cover injury ... due to the ownership [or] use of:
"any auto owned [or] operated ... by any protected person."
*1377 The van in which Randy died fits within the definition of "auto" contained in the general liability portion of the policy.
St. Paul relied on the automobile exclusion to deny coverage to the Center and King under the general liability portion of the policy. St. Paul contends that Randy's death arose out of, and was due to, the Center's ownership and use of the van and, therefore, that the exclusion prevents coverage. The Center argues that none of the allegations in the wrongful death action (i.e., that the Center and King were negligent in transporting Randy; that the Center was negligent in its training of King; and that the Center was negligent in not implementing certain policies and procedures to protect Randy) were based on the Center's ownership or use of the van. We disagree.
It is well established, as the Center points out, that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured. Likewise, when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording. Guaranty National Ins. Co. v. Marshall County Board of Educ., 540 So.2d 745 (Ala.1989). However, it is equally well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage. If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala.1987). The "auto" exclusion in the general liability portion of St. Paul's policy is not ambiguous. It clearly excludes coverage for any injury, including one that results in death, due to the ownership or use of any "auto," which includes the van in question, owned or operated by the Center or King. Although liability on the part of the Center and King appears to have been predicated on something other than a finding that King had acted negligently in operating the van (i.e., a finding that King had acted negligently in transporting Randy; a finding that the Center had acted negligently in not properly training or supervising King; or a finding that the Center had acted negligently in not implementing certain policies or procedures to protect Randy), the fact remains that Randy died in the van while it was being used by the Center to provide transportation services to the communities it serves. We conclude, therefore, that Randy's death was due to the ownership or use of the van and, consequently, that the automobile exclusion prevents coverage under the general liability portion of the policy.
The professional liability portion of the policy provides, in pertinent part, as follows:
"This agreement provides coverage for professional liability claims made against youthe person or persons named under `Individuals' in the Coverage Summary. It also covers professional liability claims made against any organization named in the Coverage Summary. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary."
The Center is named under "Profession" in the "Coverage Summary." No person or persons were named under "Individuals" in the Coverage Summary; however, an endorsement to the professional liability portion of the policy designates the Center's employees as additional insureds. The Center was named under "Organization" in the Coverage Summary. The policy defines "Organization coverage" as follows:
"If your organization is covered, it's protected for damages resulting from professional services that were or should have been provided by anyone for whose acts it's legally responsible."
"Professional services" is not defined in the professional portion of the liability policy.
The Center argues that it was providing a professional service (i.e., a transportation service) within the meaning of the professional liability portion of the policy. Citing *1378 cases in which courts have defined "profession," St. Paul takes the position that the Center was not involved in the practice of a "learned" profession at the time of Randy's death and, therefore, that the Center was not covered. We disagree.
St. Paul's position on this issue is, quite simply, untenable. The professional liability portion of the policy designates the Center as a "profession" for purposes of coverage. The Center is named under "Profession" in the Coverage Summary, and this portion of the policy states that "claims must be based on events that arise out of the profession named in the Coverage Summary." (Emphasis added.) The intent of the professional liability portion of the policy is clearthat the Center and King are covered "for damages resulting from professional services [i.e., transportation services]" that were being provided by the Center on the date of Randy's death.
For the foregoing reasons, we hold that, by virtue of the automobile exclusion, the Center and King are not covered under the general liability portion of the policy and, therefore, that the trial court's judgment, to the extent that it is to the contrary, is due to be reversed. However, we agree with the trial court that the Center is covered under the professional liability portion of the policy; therefore, that part of the judgment relating to the professional liability portion of the policy is due to be affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL and INGRAM, JJ., concur.
MADDOX and KENNEDY, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part; and dissenting in part).
Today the majority holds that Chilton-Shelby Mental Health Center ("the Center") was covered under the terms of a professional liability portion of the policy issued by St. Paul Mercury Insurance Company ("St. Paul") for the alleged negligence of the Center and its agent, Fred King, arising out of the death of a young child named Randy Carter, but that the general liability portion of the policy does not cover the same alleged negligence. I fully agree with that portion of the majority opinion holding that the professional liability portion of the policy is applicable. However, I must respectfully disagree with that portion of the opinion holding that there is no coverage under the general liability portion of the policy due to the so-called "auto exclusion."
The "auto exclusion" states "We won't cover injury ... due to the ownership [or] use of ... any auto owned [or] operated... by any protected person." The majority finds that the exclusion is unambiguous. Inherently, the majority defines the phrase "due to" as meaning "relating to or associated with." Another equally plausible meaning, however, is "caused by." Because there is another equally plausible meaning for "due to," the exclusion as a whole is ambiguous. I would, therefore, construe the exclusion against the drafter, St. Paul, and limit the exclusion's application to its narrowest reasonable reading. See, Guaranty National Ins. Co. v. Marshall County Board of Educ., 540 So.2d 745 (Ala.1989).
In this case, the alleged negligence of the Center and its agent arose out of what the plaintiffs claim was the failure of the Center and its agent to supervise and properly care for the young child entrusted to them. It seems to me that the gravamen of the complaint is an allegation of negligent supervision and care for young Carter, not of the ownership of the automobile that is alleged to have proximately caused the child's death. Negligent supervision or negligent care could have occurred at any number of places other than an automobile. Cf. Standifer v. Pate, 291 Ala. 434, 282 So.2d 261 (1973), where this Court held that a babysitter who undertook to supervise a young child could be guilty of negligence. Standifer overruled Nelson v. Gatlin, 288 Ala. 151, 258 So.2d 730 (1972), in which the Court had applied premises liability principles, rather than general negligence principles, in a case involving a scout leader's *1379 alleged negligence in failing to supervise a nine-year-old scout who was playing in his back yard.
The allegations of negligence here are substantially like those in Standifer; therefore, I cannot agree that, as a matter of law, there was no coverage under the general liability portion of the policy simply because the death of the child occurred in the automobile.
Based on the foregoing, I concur, in part, but must also respectfully dissent, in part, with the holding of the majority.
KENNEDY, J., concurs.
NOTES
[1] Although St. Paul Fire and Marine Insurance Company is designated in the trial court's judgment as the defendant and is listed as an appellant in the notice of appeal, it appears from the record that the real party in interest in this action is St. Paul Mercury Insurance Company.
[2] Other defendants named in the wrongful death action entered into a pro tanto settlement for $750,000.