**Robert COLLINS and Caroleigh Collins, Plaintiffs,**

v.

**DAVOL, INC. and C.R. Bard, Inc., Defendants.**

**Civil Action No. 3:14–cv–01392–AKK.**

United States District Court, N.D. Alabama, Northwestern Division.

Signed Nov. 4, 2014.

Ernest Cory, Jon Collins Conlin, Cory Watson Crowder & Degaris PC, Birmingham, AL, for Plaintiffs.

Clinton Timothy Speegle, Sara Anne Ford, Lightfoot Franklin & White LLC, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ABDUL K. KALLON, District Judge.

Robert Collins ("Mr. Collins") and Caroleigh Collins ("Ms. Collins") (collectively "the plaintiffs") bring this action against Davol, Inc. and C.R. Bard, Inc. ("the defendants") for breach of implied warranty, negligence, intentional and negligent infliction of emotional distress, failure to warn, loss of consortium, fraud, misrepresentation by omission, and violations of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala.Code §§ 8–19–1 *et seq.*, and the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), Ala.Code § 6–5–501 *et seq.* Doc. 1. In a nutshell, the plaintiffs allege that the defendants continued to market, sell, and distribute the Composix Kugel Patch after learning that its design was defective, failed to provide adequate warnings about the dangers associated with the product, and that Mr. Collins suffered injuries when a Kugel Patch inserted into his abdomen during a 2004 surgery malfunctioned in 2012. *Id.* The defendants move to dismiss the complaint, doc. 3, and the motion is fully briefed, *id.;* docs. 8 and 12, and ripe for review. For the reasons stated more fully below, the motion is **GRANTED** as to the plaintiffs' breach of implied warranty, negligence, intentional and negligent infliction of emotional distress, failure to warn, loss of consortium, ADTPA, and AEMLD claims and **DENIED** as to the plaintiffs' fraud and misrepresentation by omission claims.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twom-*

*bly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 557, 127 S.Ct. 1955).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Bell Atl. Corp.,* 550 U.S. at 555, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

## II. FACTUAL BACKGROUND

The following is an account of the plaintiffs' allegations, accepted as true, that are pertinent to the resolution of the defendants' motion. On February 23, 2004, Mr. Collins underwent surgery at Vanderbilt University Medical Center in Nashville, Tennessee to repair a hernia. Doc. 1 at 3. During the procedure, Dr. William O. Richards implanted an Extra Large Composix Kugel Patch into Mr. Collins' abdomen. *Id.*

During 2005, 2006, and 2007, Davol issued recalls for various versions of the Kugel Patch because of "a faulty 'memory recoil ring' that [could] break under pressure." *Id.* at 5. The plaintiffs contend that neither Mr. Collins nor Mr. Collins' "physicians were aware of the dangerous and defective condition of the Kugel Patch or that [it] was the cause of Mr. Collins'[ ] injuries until sometime after [the defendants] ... inform[ed] the general public of the defective nature of the Kugel Patches and the subsequent recalls." *Id.* at 6.

Eight years after his first operation, in April 2012, Mr. Collins sought treatment from Dr. Willie V. Melvin for ongoing and increasingly severe abdominal pain. *Id.* at 6. Dr. Melvin determined that Mr. Collins suffered from a recurrent hernia, and that there was palpable mesh at the hernia site. *Id.* After noninvasive treatment failed, Mr. Collins again underwent surgery at the Vanderbilt University Medical Center[1] on August 13, 2012. *Id.* During the procedure, Dr. Melvin discovered that the Composix Kugel Patch inserted during the previous surgery had buckled, that Mr. Collins' small bowel was densely adhered to the device's mesh in several locations where the buckle occurred, and that these adhesions were the cause of the reherniation. *Id.* Dr. Melvin further discov-

---

**1.** Although it indicates that the plaintiffs were residents of Athens County, Alabama when they initiated this lawsuit, i.e. on July 18, 2014, the complaint is silent as to the plaintiffs' domicile when Mr. Collins' Composix Kugel Patch allegedly malfunctioned. The parties briefs, however, indicate that they are in agreement that the plaintiffs lived in Alabama in 2012. *See* doc. 8 at 6; doc. 12 at 2.

ered that the device's memory recoil ring had fractured near the buckle location, and this was why the device failed. *Id.* at 6–7.

Following the August 13, 2012 surgery, Mr. Collins underwent a second, emergency surgery to control bleeding and remained hospitalized for eight days. *Id.* at 7. He continues to suffer from abdominal pain, acute anemia, and mental anguish and has incurred significant medical and lost wages. *Id.* The plaintiffs initiated this lawsuit on July 18, 2014. *Id.* at 22.

## III. ANALYSIS

The defendants argue that the plaintiffs' claims are due to be dismissed in their entirety, largely because they are time-barred. *See* doc. 3. The court will evaluate the defendants' arguments with regards to the plaintiffs' tort claims and to Mr. Collins' contract claim in turn.

### A. The Plaintiffs' Tort Claims

The defendants argue that the plaintiffs' tort claims are time-barred, and that Mr. Collins' negligent infliction of emotional distress claim is subsumed by his negligence claim. As a preliminary matter, the court notes that while the defendants initially argued that Tennessee law should govern the plaintiffs' tort claims, *see* doc. 3 at 5–6, the parties are now in agreement, at least for present purposes, that because " 'Alabama is the state where [the p]laintiffs were located when Mr. Collins suffered his initial injuries,' ... Alabama law governs [the p]laintiffs' tort claims.' " Doc. 12 at 2 (defendant's reply brief) (quoting doc. 8 at 6 (plaintiff's response brief)); *see also St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC,* 572 F.3d 893, 894 n. 1 (11th Cir.2009) ("A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits."); *Fitts v.*

*Minn. Mining & Mfg. Co.,* 581 So.2d 819, 820 (Ala.1991) ("*Lex loci delicti* has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred."). The court will examine the defendants' arguments as to the plaintiffs' fraud claims, ADTPA claim, and remaining tort claims in turn.

### 1. Mr. Collins' Fraud and Misrepresentation by Omission Claims

■ The court will begin with the plaintiffs' fraud claims. Ala.Code § 6–2–3, which governs the accrual of fraud actions, provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." Alabama's Supreme Court has defined "discovery by the aggrieved party" as the time at which "the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud." *Wheeler v. George,* 39 So.3d 1061, 1081 (Ala.2009) (citing *Ex parte Seabol,* 782 So.2d 212, 216 (Ala.2000); *Foremost Ins. Co. v. Parham,* 693 So.2d 409, 421 (Ala. 1997)). "Therefore, the limitations period [for a fraud claim] commences when the plaintiff discovers the fraud or when facts are known 'which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.' " *Id.* (quoting *Auto–Owners Ins. Co. v. Abston,* 822 So.2d 1187, 1195 (Ala. 2001)).

The Alabama Supreme Court has repeatedly held that " 'the question of when [a] party discovered or should have discovered the fraud is generally one for the jury.' " *Wheeler,* 39 So.3d at 1082 (quoting

*Liberty Nat'l Life Ins. Co. v. Parker,* 703 So.2d 307, 308 (Ala.1997)); *see also Seabol,* 782 So.2d at 216. It has further held that "'[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud.'" *Wheeler,* 39 So.3d at 1082–83 (emphasis in original) (quoting *Kelly v. Conn. Mut. Life Ins. Co.,* 628 So.2d 454, 458 (Ala.1993)).

■ The defendants seem to present two overlapping arguments for why Mr. Collins' fraud claims are time-barred. The first is that although Mr. Collins claims he did not learn about the Kugel Patches' alleged defects "until sometime after [the defendants] chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls," as a member of the general public, Mr. Collins was placed on notice of the Kugel Patches' alleged defects when the defendants made their disclosure, and should have realized that the alleged defects were a potential cause of his injuries, which manifested, at the latest, in April 2012, when he sought medical treatment for them. Doc. 3 at 11 (quoting doc. 1 at 6). The second is that because in April 2012, Dr. Melvin diagnosed Mr. Collins with a hernia and observed "palpable mesh at the hernia site," the plaintiffs either knew or should have known that Mr. Collins' Kugel Patch had malfunctioned no later than April 2012. *Id.* At any rate, both of the defendants arguments place the start of the limitations period in April 2012, more than two years before the plaintiffs initiated their lawsuit on July 18, 2014.

In contrast, Mr. Collins argues that the complaint clearly indicates that he did not learn that his Kugel Patch had failed until Dr. Melvin removed it on August 13, 2012 and observed the fracture in the memory recoil ring. Doc. 8 at 8–9. Consequently, Mr. Collins argues, his fraud claims did not accrue until August 13, 2012, and when the plaintiffs filed their complaint on July 18, 2014, he was still within the two-year limitations period.

■ While the defendants' arguments are certainly plausible, at this stage of the litigation the court is required to accept Mr. Collins' contention that he did not know his Kugel Patch had failed until August 13, 2012 as true. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. As far as the defendants' contentions that even if Mr. Collins did not actually know his patch had failed prior to August 13, 2012, he was on notice because of the defendants' public disclosures regarding the Kugel Patches' defects and Dr. Melvin's observation of palpable mesh at the hernia site are concerned, the defendants overlook Alabama law's clear position that the question of when a party should have reasonably discovered fraud is generally one for a jury, and that courts should decide this issue "as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Wheeler,* 39 So.3d at 1082–83. Consequently, because at this juncture the court must "limit its consideration to the pleadings," and because Mr. Collins has properly pleaded facts indicating that he did not discover the defendants alleged fraud until August 13, 2012, i.e. within the limitations period, the defendants' motion to dismiss the plaintiffs' fraud claims is **DENIED.**[2]

2. The defendants contend that the Mr. Collins' fraud claims are barred by the ADTPA's Savings Clause. Doc. 3 at 12 (citing Ala.Code

§ 8–19–15(a)). The ADTPA's savings clause "provides that the [ADTPA] is cumulative and that a plaintiff can elect to sue for the reme-

### 2. Mr. Collins' ADTPA claim

■ The court next turns its attention to Mr. Collins' ADTPA claim. As an initial matter, the court notes that the plaintiffs failed to address the defendants' argument that Mr. Collins' ADTPA claim is time barred in their response to the defendants' motion to dismiss.[3] Consequently, Mr. Collins has abandoned his ADTPA claim, and it is due to be dismissed on those grounds alone. *See e.g., Fischer v. Fed. Bureau of Prisons,* 349 Fed.Appx. 372, 375 n. 2 (11th Cir.2009) (citing *Transamerica Leasing, Inc. v. Inst. of London Underwriters,* 267 F.3d 1303, 1308 n. 1 (11th Cir.2001)).

■ Alternatively, turning to the merits of the defendants' argument, Mr. Collins' ADTPA claim is due to be dismissed on timeliness grounds as well. The ADTPA's statute of limitations provides that "[n]o action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action." Ala.Code § 8–19–14. Although the defendants again argue that the plaintiffs should have discovered the defendants' alleged fraud by April 2012, doc. 3 at 10, even if it began on August 13, 2012, the date when Mr. Collins contends his claim accrued, the limitations period expired on August 13, 2013, almost a year before the plaintiffs filed the complaint. Additionally, per its statute of repose, no claims may be brought pursuant to the ADTPA "more than four years from the date of the transaction giving rise to the cause of action."[4] *Id.* Consequently, the statute of repose extinguished any claim Mr. Collins could have brought under the ADTPA on February 23, 2008—four years after the date of the implantation of Mr. Collins' Kugel Patch. In short, there are multiple grounds for finding that Mr. Collins' ADTPA claim is untimely, and for that reason, along with Mr. Collins' abandonment of the claim, the defendants' motion for the dismissal of the plaintiffs' ADTPA claim is due to be **GRANTED.**

---

dies provided under the [ADTPA] or to sue for remedies allowed by the common law." *Cheminova Am. Corp. v. Corker,* 779 So.2d 1175, 1183 (Ala.2000) (citing § 8–19–15(b)). However, "there is no prohibition against [a] plaintiff pleading two alternative, inconsistent and mutually exclusive claims ... [although a] plaintiff can recover under one of the remedies." *Missildine v. City of Montgomery,* 907 F.Supp. 1501, 1505 n. 3 (M.D.Ala.1995) (citing *Ex parte King,* 591 So.2d 464 (Ala.1991)). At any rate, because the court dismisses the plaintiffs' ADTPA claim below, this is now a nonissue.

3. The plaintiffs obliquely reference their ADTPA claim by contending that the "two year time period between the date the defective Composix Kugel Patch was ... removed from [Mr. Collins'] abdomen clearly demonstrates that all of [the p]laintiff[s'] plead[ed] tort actions fall within Alabama's natural statute of limitations." Doc. 8 at 9. This contention fails to address the defendants' argument that the plaintiffs failed to initiate their ADTPA claim within the ADTPA's *one year* statute of limitations.

4. An exception to the ADTPA's statute of repose exists for contracts or warranties lasting for more than three years:

If the contract or warranty is for more than three years, no action may be brought more than one year from the expiration date of the contract or warranty or more than one year after the person bringing the action discovered or reasonable should have discovered the act or practice which is the subject of the action, whichever occurs first.

Ala.Code § 8–19–14. There is nothing in the complaint indicating that a contract or warranty for a period of more than three years was associated with the implantation of Mr. Collins' Kugel Patch, and, in any event, even if there were, Mr. Collins still failed to file his suit within a year of discovering the defendants' alleged fraud. *See* Ala.Code § 8–19–14.

*3. Mr. Collins' negligence, intentional and negligent infliction of emotional distress, failure to warn and AEMLD claims and Ms. Collins' loss of consortium claim*

█ Finally, the court turns to the plaintiffs' remaining tort claims. As preliminary matter, the court notes that "negligently causing emotional distress is not an independent tort in Alabama, but, rather, ... is part and parcel of the traditional tort of negligence."[5] *AALAR Ltd., Inc. v. Francis,* 716 So.2d 1141, 1144 (Ala.1998). Consequently, Mr. Collins' negligent infliction of emotional distress claim is subsumed by his negligence claim, and the defendants' motion to dismiss this claim is **GRANTED.**

█ The plaintiffs' remaining claims are all derived from the injuries Mr. Collins suffered due to the failure of his Kugel Patch. In Alabama, "[a]ll actions for any injury to the person or rights of another not arising from contract ... must be brought within two years."[6] Ala.Code § 6–2–38. The statute of limitations begins to run when the cause of action accrues. Ala.Code § 6–2–30(a). "A cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Smith v. Medtronic, Inc.,* 607 So.2d 156, 159 (Ala.1992) (citing *Garrett v. Raytheon Co.,* 368 So.2d 516 (Ala.1979)). More specifically, "[a] party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the

injury." *Id.* (citing *Brotherhood of Locomotive Firemen & Enginemen v. Hammett,* 273 Ala. 397, 140 So.2d 832 (1962)). "At the time of the first legal injury, the period of limitations begins to run, whether or not the full amount of damages is apparent." *Id.* (citing *Garrett,* 368 So.2d at 519; *Stephens v. Creel,* 429 So.2d 278 (Ala.1983); 51 Am. Jur. 2d. Limitations of Actions § 135 (1970); *Atkins v. Am. Motors Corp.,* 335 So.2d 134 (Ala.1976)). Critically here, under Alabama law, a tort cause of action stemming from a defective medical device accrues when the medical device fails and injures the recipient of the device. *Pfizer, Inc. v. Farsian,* 682 So.2d 405, 408 (Ala.1996). In other words, the event that triggered the statute of limitations for the plaintiffs' non-fraud and ADTPA tort claims is when the Kugel Patch injured Mr. Collins, not when he learned of the device's failure.

Once again, the defendants contend that the plaintiffs' claims accrued no later than April 2012, when Mr. Collins sought attention for abdominal pain and Dr. Melvin diagnosed him with a hernia, doc. 3 at 14, while the plaintiffs contend their claims accrued on August 13, 2012, when Dr. Melvin discovered Mr. Collins' Kugel Patch had failed, doc. 8 at 9. Here, however, the law and the facts are on the defendants' side because it is clear from the complaint that Mr. Collins' Kugel Patch had failed and injured him by April 2012. According to the complaint, during the August 23, 2012 surgery, Dr. Melvin discovered that Mr. Collins' Kugel Patch had failed, and that the failure *"was also the*

---

**5.** The *AALAR Ltd.* court took pains to note, however, that "contrary to a number of confusing statements that this Court has made ... to the effect that Alabama recognizes no 'cause of action' for negligently inflicted emotional distress, we have recognized, since this Court's 1981 decision in *Taylor [v. Baptist Medical Center, Inc.,* 400 So.2d 369 (Ala.

1981)], a right of recovery for mental or emotional harm." *AALAR Ltd.,* 716 So.2d at 1145.

**6.** The parties are in agreement that the plaintiffs' remaining tort claims are subject to a two-year statute of limitation. *See* doc. 3 at 13 n. 67; doc. 8 at 9.

*cause of the reherniation.*" Doc. 1 at 6. Moreover, according to the complaint, Dr. Melvin diagnosed the "recurrent hernia" that ultimately necessitated the August 23, 2012 surgery in April 2012. *Id.* Consequently, it follows that by April 2012, Mr. Collins had sustained injuries caused by his Kugel Patch. As such, the statute of limitations began to run in April 2012, and it expired in April 2014—three months before the plaintiffs filed their complaint. In sum, Mr. Collins' negligence, intentional emotional distress, failure to warn, and AEMLD claims and Ms. Collins' loss of consortium claim are time-barred, and the defendants' motion to dismiss them is **GRANTED.**

### B. Mr. Collins' Breach of Implied Warranty Claim

As with the plaintiffs' tort claims, the defendants argue that Mr. Collins' breach of implied warranty claim is due to be dismissed because it is untimely. Doc. 3 at 8, 14–16. At the outset, the court notes that although Mr. Collins argues that his breach of warranty claim is sufficiently pleaded, doc. 8 at 12–14, he fails to address the defendants' contentions that the claim is time-barred. Consequently, as with his ADTPA claim, he has abandoned his breach of warranty claim and it is due to be dismissed on those grounds alone. *See e.g., Fischer,* 349 Fed.Appx. at 375 n. 2 (citing *Transamerica Leasing, Inc.,* 267 F.3d at 1308 n. 1).

 Turning to the merits of the defendants' argument, as an additional preliminary matter, the court notes that the parties are at odds regarding which state's substantive law should govern Mr. Collins' breach of warranty claim. The plaintiffs argue that Alabama law, or, in the alternative, Rhode Island law, should apply because those are the only states with a sufficient connection to the present matter "to establish a rational basis for application of their laws, such that the choice of law would be constitutionally permissible rather than arbitrary." Doc. 8 at 3–4. The defendants contend that, pursuant to the principles of *lex loci contractus,* Tennessee law, or, in the alternative Alabama law should apply.

Here, the law is squarely on the defendants' side. As explained in passing above,

> a federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus,* applying the law of the state where the contract was formed.

*St. Paul Fire and Marine Ins. Co.,* 572 F.3d at 894 n. 1 (citing *Cherokee Ins. Co., Inc. v. Sanches,* 975 So.2d 287, 292 (Ala. 2007)). In light of these well established principles, the plaintiffs' arguments regarding the significant relationships between Rhode Island, Alabama, and the parties are irrelevant. Moreover, because the transaction giving rise to Mr. Collins' breach of warranty claim was the implantation of his Kugel Patch at Vanderbilt University Medical Center in Nashville, Tennessee,[7] that is where the relevant contract was formed, and Tennessee substantive law applies to Mr. Collins' breach of warranty claim.

Pursuant to the Tennessee Products Liabilities Act (TPLA), all product liability claims in Tennessee [8] "must be brought

---

**7.** The plaintiffs do not argue that another transaction gave rise to Mr. Collins' breach of warranty claim, and the complaint does not refer to any potential alternative.

**8.** Per the TPLA:

within ten (10) years from the date on which the product was first purchased for use or consumption."[9] Tenn.Code § 29–28–103. Mr. Collins "purchased" the Kugel Patch on February 23, 2004, when Dr. Richard implanted it into Mr. Collins' ab-

---

"Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; *breach of warranty, express or implied;* breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn.Code § 29–28–102(6) (emphasis added).

9. "When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which *substantive law* governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir.2008) (emphasis added) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). This court has twice recently held that the TPLA's statute of repose is substantive, rather than procedural for the purposes of a choice of law analysis. *See Haygood v. Precision Husky Corp.,* No. 4:13–cv–2166–VEH, 2014 WL 584314, at *3 (N.D.Ala. Feb. 13, 2014) (emphasis in original) (quoting *Bramblett v. Nick Carter's Aircraft Engines, Inc.,* No. 294, 1991 WL 12284 at *4 (Tenn.Ct.App. Feb. 7, 1991)) (emphasis added) (noting that when "dealing with a conflicts of law scenario, the Tennessee Court of Appeals held 'that the ten-year limitation of action set forth in … § 29–28–103(a) *is substantive law* ' "); *Terrell v. Damon Motor Coach Corp.,* No. 6:12–cv–02390–LSC, 2013 WL 6145534, at *4 (N.D.Ala. Nov. 20, 2013) (noting that the TPLA's "statute of repose is 'inextricably bound up' with [the TPLA's] substantive requirements because it was passed as part of the same law and is codified in the same chapter" and "the Tennessee Supreme Court and the General Assembly have also both stated that the time bar embodied in the statute of repose represents a central purpose of the TPLA").

In the alternative, even were the court to find that the TPLA's statute of repose is procedural and does not apply to the present matter and further, that Alabama law should apply, *see Murphy v. McGriff Transp. Inc.,* No. 2:11–cv–02754–RDP, 2012 WL 3542296, at *1 (N.D.Ala. Aug. 15, 2012) (noting that federal courts sitting in diversity apply the procedural law of the state in which they sit and that "[i]t is generally recognized in Alabama that statutes of limitations are procedural"); *c.f. Ex parte Liberty Nat'l Life Ins. Co.,* 825 So.2d 758, 765 (Ala.2002) (quoting 51 Am.Jur.2d Limitation of Actions § 32 (2000)) (" '[W]hile a statute of limitations generally is procedural and extinguishes the remedy rather than the right, … repose is substantive and extinguishes both the remedy and the actual action.' "), Mr. Collins' breach of warranty claim would still be due to be dismissed. Under Alabama's Uniform Commercial Code, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued," Ala. Code § 7–2–725(1), and a breach of warranty claim accrues "when tender of delivery is made, … however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs," § 7–2–725(2). Although no Alabama court has considered whether a medical device is a "consumer good," such a device is clearly inconsistent with the Alabama Uniform Commercial Code's definition of "consumer good," i.e. " 'goods that are used or bought for use primarily for personal, family, or household purposes.' " *CNH Am., LLC v. Roebuck,* 41 So.3d 41, 45 (Ala.2009) (quoting Ala.Code § 7–9A–102(a)(23)) (holding that a backhoe originally purchased for use by a construction business and later used by a family farming business was not a consumer good). Consequently, because the Kugel Patch is not a consumer good, under Alabama law, the statute of limitations on Mr. Collins' breach of warranty claim expired on February 23, 2008, more than six years before the plaintiffs initiated this lawsuit. In sum, Mr. Collins' breach of warranty claim is untimely under either Alabama or Tennessee law.

domen. Consequently, the TPLA's statute of repose extinguished any products liabilities claim related to Mr. Collins' Kugel patch on February 23, 2014. Therefore, Mr. Collins breach of warranty claim is time barred, and the defendants' motion to dismiss it is due to be **GRANTED.**

## IV. CONCLUSION

For the reasons explained above, namely that the claims are time-barred, as to Mr. Collins' negligence, AEMLD, intentional infliction of emotional distress, failure to warn, ADTPA, and implied breach of warranty claims and Ms. Collins' loss of consortium claim, the defendants' motion to dismiss is **GRANTED.** Likewise, because, under Alabama law, Mr. Collins' negligent infliction of emotional distress claim is subsumed by his negligence claim, the defendants' motion to dismiss Mr. Collins' negligent infliction of emotional distress claim is due to be **GRANTED** as well. However, because Mr. Collins alleges he did not learn his Kugel Patch had failed until after his August 13, 2012 surgery, and because whether he should have realized the patch had failed prior to that date is a factual determination, the defendants' motion to dismiss Mr. Collins' fraud and misrepresentation by omission claims is **DENIED.**