[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10941
Non-Argument Calendar

_____

D.C. Docket No. 9:12-cv-80299-RNS

THE ZODIAC GROUP, INC., et al.,

Plaintiffs-Appellants,

versus

AXIS SURPLUS INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court for
the Southern District of Florida

_____

Before DUBINA, HULL, and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiffs–Appellants the Zodiac Group, Inc., David Felger, and Daniel

Felger appeal the district court's dismissal of their complaint against Defendant–

Appellee Axis Surplus Insurance Company.  After reviewing the record and

considering the arguments presented in the briefs, we affirm.

## I.    FACTUAL BACKGROUND

This case concerns the scope of coverage under a professional liability insurance policy that Defendant–Appellee Axis Surplus Insurance Company ("Axis") issued to Plaintiffs–Appellants the Zodiac Group, Inc., David Felger, and Daniel Felger (collectively referred to as "Zodiac").  The Zodiac Group offers "psychic" hotline telephone services.  David Felger and Daniel Felger own and operate the Zodiac Group.

The parties dispute whether the insurance policy provides coverage for the attorney's fees and expenses that Zodiac incurred defending against a federal lawsuit brought by Zodiac's ex-business partner, Linda Georgian.

## A.    Georgian's Endorsement Agreement with Zodiac

In November 2001, the Zodiac Group entered into an agreement wherein Georgian, a renowned psychic and co-host of the Psychic Friends Network,[1] agreed to endorse the Zodiac Group's services (the "Endorsement Agreement"). The Endorsement Agreement required Georgian to "provide endorsement services to Zodiac relating to the telephone psychic entertainment services offered by Zodiac to its affiliates."  In March 2007, the Endorsement Agreement ended.

_____

[1]The Psychic Friends Network is a telephonic psychic service that started in the 1990s and was commonly advertised through infomercials.

2

**B.    Georgian's State Court Litigation Against the Zodiac Group**

In April 2008, Georgian sued Plaintiff–Appellant the Zodiac Group in Florida state court.  Georgian's state court complaint alleged generally that the Zodiac Group improperly used Georgian's name and likeness after the Endorsement Agreement ended to falsely imply that she endorsed the Zodiac Group's services.  The complaint provided specific details supporting its allegations, including that the Zodiac Group (1) "repeatedly and continuously used Georgian's name and likeness to promote its psychic services"; (2) "incorrectly promote[d] Georgian's endorsement of [the] Zodiac Group's services"; (3) used Georgian's name and likeness on its websites; (4) used Georgian's name and image on its advertisements in national print media; (5) used Georgian's name in its national call solicitations; and (6) maintained telephone advertising under the name "Psychic Friend Linda Georgian."

The complaint also alleged that the Zodiac Group extensively advertised its psychic services in various media, including the Internet, national magazine publications, telephone call lines, and yellow page services.  The complaint then alleged that the Zodiac Group "published and printed for trade, commercial and proprietary advertising purposes" the photographic likeness and name of Georgian without her permission and in direct contravention of her express demands to stop.

3

Attachments to the complaint contained numerous advertisements from the Zodiac Group with Georgian's name, likeness, and references to Georgian's affiliation with the Psychic Friends Network.

Based on these allegations, Georgian sought damages and injunctive relief. In November 2009, the state court dismissed Georgian's complaint, without prejudice, for lack of prosecution.

## C.    Georgian's Federal Court Litigation Against Zodiac

Two months later, in January 2010, Georgian sued Zodiac (i.e., the Zodiac Group, David Felger, and Daniel Felger) in federal court. Georgian's federal complaint sought damages and equitable relief. In January 2011, Georgian amended her federal complaint. The amended complaint removed two claims but was otherwise substantially similar to Georgian's prior complaint.

Georgian's federal complaint was predicated on the same wrongful conduct as her state court complaint—namely, that Zodiac improperly used Georgian's name and likeness after the Endorsement Agreement ended to falsely imply that she endorsed the Zodiac Group's services. As with her state complaint, Georgian's federal complaint provided specific details supporting its allegations, including that Zodiac (1) repetitively used Georgian's name and made false claims on its website that Georgian endorsed Zodiac's psychic readers; (2) published scores of Internet

4

directory and advertising listings falsely promoting and advertising its phone number as Georgian's number; (3) published "hard paper periodical advertising" that improperly used Georgian's name, image, and likeness to promote its business; (4) directed its psychic telephone workers to falsely inform callers that Georgian had a line with, was affiliated with, or owned that telephone network; (5) directed its psychic telephone workers to falsely inform callers that they were Georgian; (6) fostered a misbelief that Georgian endorsed or was affiliated with Zodiac; (7) established a misleading paper trail by placing terms like "Psychic Friend" on customers' credit card statements to create the appearance that Georgian, rather than Zodiac, provided and charged for the psychic telephone services; and (8) used various unauthorized techniques, such as creating false Ancestry.com and Facebook.com accounts, to "optimiz[e] the appearance and linkage" between Zodiac and Georgian on the Internet. The federal complaint alleged that these acts continued through at least September 2009.

The district court dismissed most of the counts in Georgian's federal complaint. The parties settled the remaining claims.

## D.    The Insurance Policy Between Zodiac and Axis

In October 2008, insurer Axis issued Zodiac a professional liability insurance policy ("the Policy"). The Policy's inception date was October 1, 2008;

5

its expiration date was October 1, 2009; and its retroactive date was March 6, 1998.  In 2009, the parties renewed the Policy.  The renewed Policy continued coverage through October 1, 2010.

Plaintiff-Appellant the Zodiac Group was a "Named Insured" under the Policy.  As officers and directors of the Zodiac Group, Plaintiffs-Appellants David Felger and Daniel Felger were both "Individual Insureds" under the Policy.

The Policy stated that Axis would insure against claims arising from, inter alia, "interference with rights of privacy or publicity, including . . . commercial appropriation of name or likeness."

Approximately one week after Georgian filed her federal court complaint, Plaintiff-Appellant David Felger notified Axis of the litigation and sought coverage and a defense under the Policy.  Axis denied coverage and a defense because, inter alia, the claims in Georgian's federal complaint were "first made" before the policy period began in October 2008 because they "stem[med] from misuse of her image without authorization," as alleged in Georgian's April 2008 state court complaint.

After Georgian amended her federal complaint, Zodiac renewed its request for coverage and a defense under the Policy.  Again, Axis declined coverage.

6

After the federal litigation was resolved, Zodiac sought indemnification for its legal fees.  Axis did not respond to this request.

## II.    PROCEDURAL BACKGROUND

After Axis denied coverage, Zodiac filed a two-count complaint against Axis in the district court, seeking declaratory relief and damages for breach of contract.  Axis asserted that the Policy did not apply to claims related to Georgian's federal litigation and moved to dismiss Zodiac's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court granted Axis's motion and, subsequently, denied Zodiac's motion to reconsider its decision.  Zodiac now appeals the district court's dismissal of its complaint against Axis.

## III.    STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure.  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010).  In reviewing a Rule 12(b)(6) dismissal, we "accept[] the complaint's allegations as true and constru[e] them in the light most favorable to the plaintiff."  Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

In ruling upon a motion to dismiss, the court is generally confined to considering the complaint and any attachments thereto. See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). However, the "court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." Id.; see also Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 & n.3 (11th Cir. 2005).

The interpretation of provisions in an insurance contract is a question of law that we review de novo. St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009); Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).

## IV.    DISCUSSION

### A.    Florida Law

"In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result." Technical Coating Applicators, 157 F.3d at 844. This Court must follow the decisions of the forum state's highest court when that court

8

has addressed the relevant issue.  Id.  In this contract action, we apply Florida's law because Florida is the forum state.

Under Florida law, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage."  U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written."  Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc., No. SC12-905, --- So. 3d ---- (Fla. July 3, 2013) (internal quotation marks omitted).

## B.    Terms of the Policy

The district court properly granted Axis's motion to dismiss because the plain language of the Policy precluded coverage of Georgian's claims against Zodiac.

Unless specific conditions precedent were met, the Policy did not cover claims arising from wrongful acts committed prior to the Policy's date of inception.  The claims in Georgian's federal complaint alleged wrongful acts by Zodiac beginning in March 2007.  Such acts predate the Policy's October 2008 inception date.  Consequently, the Policy did not cover the claims arising from the

9

wrongful acts alleged in Georgian's federal complaint unless certain specific conditions precedent in the Policy were met.

One of those specific conditions precedent for coverage based on prior wrongful acts was that the claims have been "first made against an[] Insured during the Policy Period" from October 2008 to October 2010. (Emphasis added.) Thus, we must analyze whether—under the terms of the Policy—the claims in Georgian's federal complaint were "first made" when Georgian filed her federal complaint in January 2010 (which was during the policy period) or when Georgian filed her state complaint in April 2008 (which was before the policy period).

## C.    "First Made" and "Same Wrongful Act"

The Policy expressly provided a method for determining when a claim was "first made." Under the Policy, "all Claims arising from the same Wrongful Act" are deemed to have been made on the same date. Under the Policy, a "wrongful act" is "conduct or alleged conduct by an Insured." The Policy treats all wrongful acts "related by common facts, circumstances, transactions, events and/or decisions . . . as one Wrongful Act."

Here, the many wrongful acts alleged in Georgian's state and federal actions are clearly related by common facts, circumstances, transactions, events and/or decisions. Specifically, those wrongful acts all related to Zodiac's alleged efforts

10

to falsely imply that Georgian endorsed or was associated with its psychic services after the Endorsement Agreement ended in March 2007. Consequently, under the Policy's plain language, the acts alleged in Georgian's state and federal actions were "one Wrongful Act" for purposes of determining coverage under the Policy.

Zodiac asserts that, because Georgian's state complaint was brought against the Zodiac Group only and Georgian's federal complaint was brought against the Zodiac Group and the Felgers, the Felgers' alleged misconduct constituted a "new wrongful act."

The Policy does not draw this distinction. In fact, the Policy states that "all wrongful acts . . . related by common facts, circumstances, transactions, events and/or decisions" are treated as "one Wrongful Act." The Policy does not limit this broad language to only those acts committed by a single actor.

Because all claims in Georgian's state and federal complaints arose from the "same Wrongful Act," the Policy treats those claims as having been made on the same date.

**D.    Date That the Claims Were "First Made"**

The Policy also provided a formula for determining that date. Specifically, the Policy deemed "claims arising from the same Wrongful Act" to have been made on the "earlier of" (1) the date that "the first of those claims [was] made

11

against any Insured" <u>or</u> (2) the "first date [that Axis] receive[d] the Insured's written notice of the Wrongful Act."

In this case, the first claim was made in April 2008 when Georgian filed her state complaint against the Zodiac Group. The first date that Axis received notice of claims arising from this Wrongful Act was in January 2010—when Plaintiff–Appellant David Felger notified Axis of Georgian's federal complaint and sought coverage and a defense under the Policy. The earlier of these dates is April 2008, which is before the Policy's inception in October 2008.

Because the Policy treated Zodiac's alleged effort to use Georgian's name and likeness without permission and to create a false impression that Georgian was associated with or endorsed Zodiac's services as a single "Wrongful Act" and because the first claim related to that Wrongful Act occurred well before the Policy's inception date, the Policy did not cover the claims in Georgian's federal complaint.

## V. CONCLUSION

In summary, a condition precedent to coverage under the Policy was that the claims have been "<u>first made</u> . . . during the Policy Period" from October 2008 to October 2010. Because all claims in Georgian's state and federal complaints "aros[e] from the same Wrongful Act" and because the Policy deemed the claims

12

for that same Wrongful Act to have been first made in April 2008, the claims in Georgian's federal complaint were not "first made" during the policy period. Therefore, the claims in Georgian's federal complaint were excluded from the Policy's coverage, and Zodiac was not entitled to indemnification or a defense against Georgian's federal court litigation.  Thus, the district court properly granted Axis's motion to dismiss Zodiac's complaint.

**AFFIRMED**.

13